Page number 09-2147, People v. Bianco v. Snowden All right, we understand that. What about this motion to suppress? I mean, wouldn't that be the main strategy here to try to suppress a statement? In order to succeed on an ineffective assistance of counsel claim, defendant has to show that he would also win on his substantive claim. And defendant has conceded that – I don't know if it's win. I think that is a reasonable probability of success. Reasonable probability of success, yes. But defendant has stated that the confusion over whether Snowden would be charged and tried as an adult is not enough to overturn the voluntariness of his statement. And that is the only basis that he offers for suppressing the statement. The record and the evidence clearly establish that this statement was voluntary, that any confusion over whether he would or would not be charged as an adult was immediately cleared up by the assistant state's attorney taking the statement. While the state recognizes that special care does need to be given to juvenile confessions, in this case there is absolutely no evidence that defendant's will was overborne or that special care was not taken. Defendant was interrogated in the presence of his father. His previous statements were given in the presence of his mother or a youth officer. Mr. Gonzalez suggests, though, that you're not really looking at the whole picture. You've isolated the videotaped confession and don't really focus on these earlier claims that he was interrogated without being advised to Miranda, he was interrogated without a parent or a juvenile officer present, that the initial statements he gave were clearly in violation of his rights and that those should be considered in determining whether there's a reasonable probability that the motion would have been granted. With the earlier statements, the record does not bear out defendant's claims. Defendant was not under arrest. He was not even a suspect at that point. What happened was the police took him and Tyree Bell off the street and brought them in for questioning. The police asked him how he came to possess Jennings' cell phone. How do you really rationalize he wasn't a suspect when, at that point, they knew that the cell phone had been used after she died and that the young woman testified that she talked to Tay with that cell phone? Yes, but the detective testified at trial that at that point they were still in the investigatory process and they were still trying to determine what exactly had happened, and they brought defendant and Tyree Bell both in for questioning. The only question that defendant was asked without a parent or youth officer present or without receiving his Miranda rights was how he came to be in possession of the victim's cell phone. Once the questioning continued, defendant was given his Miranda rights. His mother arrived at the station when she had to leave a youth officer. Officer Chappell was present. The police did take every care to ensure that this juvenile's confession was voluntary and that his will was not overboard. If there are no further questions, then the State respectfully asks that for these reasons and all of those stated in our brief that you affirm the defendant's convictions and sentence. Thank you. All right, thank you. Mr. Gonzalez, briefly? Briefly, I'll focus on a couple of responses. First of all, the jury was given this instruction, and I read it verbatim. This particular jury was told, quote, Just the end part, right where? Right. A person who is legally responsible for the conduct of another may be convicted for the offense committed by the other person, even though the other person, who it is claimed, committed the offense. Who it is claimed. That was part of the point that I was trying to make in my first argument, who it is claimed. But you're trying to read that language that the State must identify who it is claimed committed the crime. No, well, yes. I mean, it tracks that confession. Because there's no dispute that the defendant did not commit the crime, and the State is claiming that someone other than the defendant committed the crime. And I think, I'm not sure if I'm following you. I'm confessing that the defendant committed the crime. We're arguing he wasn't accountable. I understand that. But I'm asking you, what does that language mean to you? What evidence did the State have to present to satisfy that language? At least a claim. Or as Garrett put it, a suggestion. Something to at least suggest or some evidence that there's this identifiable somebody that committed this particular crime. This identifiable group of cohorts or person with whom we can connect this defendant. But didn't they prove that when they put in his statement? His multiple statements that either Rico or what's the other fellow's name? Norman Shipp. No, I thought it was Shipp's son. Oh, no, it was his nephew. Prentiss. Prentiss, yeah. Prentiss. Or it was simply someone that Deontay didn't want to give up. Okay, but again. So then, hasn't the jury, I mean, hasn't the State shown that there was someone who did this? No, because the State, first of all, it turned out to be false. The jury didn't believe it. The prosecutor didn't believe it. They basically stayed away from it and just said, and it's obvious they didn't believe it. They certainly chose not to prosecute. Well, when they didn't believe it, are you then agreeing that he was simply not giving up the person that he wanted that did the actual stabbing? Well, no, because I don't know why. I just know he wasn't identified. I just know that the State chose not to believe that particular part of the statement. Also, I think it's pretty evident that the jury, by their question, chose not to believe it. But they asked a question. They got an answer. Then they went back and deliberated, and then they found the defendant guilty. Well, of course, yeah. The court did answer in the affirmative, but they were still told that they were given this particular instruction. What was the question that the jury posed? Recall it for me. You want me to quote it? It was something about the gist of can we still find him accountable if we are uncertain as to who the stabber was? Okay, now, what did the court say? The court just answered yes. All right. Now, you're not challenging that on appeal. Don't you have to say that that was wrong in order to get where you want to go on this case? I don't think so because, again, this is- Deontay Snowden accountable for this murder. But this is a sufficiency of the evidence claim. I don't think the two necessarily link. I don't think that that challenge or the absence of that challenge precludes- Wasn't the court saying that for purposes of the evidence, they don't-the jury did not have to conclude or find who actually did the stabbing in order for Snowden to be accountable for that person's acts? But my point is that they did. And because they did not, that that's why he wasn't proven beyond a reasonable doubt that he was accountable for the crime. I don't think the question itself or a lack of objection to the question necessarily dictates the result or the relief that I'm asking for as far as the reasonable doubt argument goes. Okay. But I think that the court, by giving that answer, has answered the question that there is no case law that you're suggesting requires the state to prove who, in fact, that person was. Well, I think-I submit Garrett does. I submit Garrett is authority for that proposition. And- I thought that was about causation. You'll need to- That's not causation. Again, that was-again, it's about who caused, not what caused. And here, we don't know who caused. And that's the whole point. That's the whole problem. Quickly on issue two. Another part of why this was so important, again, in the context of where we are now, again, it does turn on probabilities. Of course, we have no way of knowing because it wasn't litigated. All right. Well, let's look at everything else. Okay. Aside from, you know, obviously his youth and all of these, you know, almost kind of a stenchiness to it, to the extent that we have some-keeping in mind, of course, that juveniles are easily, you know, it's well-recognized that they're easily exploited, that they succumb to improper pressures and that type of thing. But, all right, we have everything from the point at which he was picked up. And, by the way, he was suspected early on. In fact, I think there was testimony- In Austin. Yeah, he said he was already in custody. That's on page Y111. So, yeah. There are- No question. There aren't very many cases where this ineffective assistance for failure to file a motion to suppress has succeeded on appeal. Well, little. Right, little. How old is little? The year, I don't recall off the top of my head, but, I mean, it certainly- But there aren't very many. No. It's kind of difficult for us to- 2001. It's difficult for us to go over the record and find that there's a reasonable probability that this motion would have been granted. But I don't even think- Again, little also pointed out that in a case where there's really no other strategy- Well, here the strategy was no accountability, reasonable doubt, which you've- But little also said- Argued very effectively. I'm sorry. Little also said that just the availability of that defense or any other defense doesn't justify not challenging a statement in a case like this. But actually, aren't the cases pretty clear that filing motions as a general, general rule are typically strategy? But the key words there are general and typical. I mean, this Manning case doesn't really give a good sort of argument for picking at these- What are strategy matters? I mean, Manning involved suggesting that a biased juror could be strategical. Now, filing a motion- I mean, there's many cases out there that state that when a lawyer decides whether or not to file a motion, that's clearly a matter of strategy. Well, you know, certainly that it's deferential, but it's certainly not ironclad. And I think what's important about little is it talks about instances where either there's no other strategy or even notwithstanding some other strategy that may be available, like in this case, the absence of a principal. It's hard to envision in a case like this where you have a 15-year-old- Let's take a close look at little, but you'll need to wrap up. Okay, well, I guess my final point, then, is this whole question of prejudice. Because, again, I think that there's no question that this was certainly one of his best defense, if not his only other defense, aside from the absence of a principal. There was absolutely no downside to pursuing a motion on this particular ground. In other words, trying to flesh out and get into some of the circumstances and questions that were raised by this particular confusion. But as far as, you know, the prejudice goes, I know that the state points out in its brief that There's no downside for the defendant, but sometimes there's a downside for the lawyers. And the lawyer doesn't want to do a motion that's a dead-bang loser. But it's not about the lawyer, it's about the defendant. Sometimes it's about both. But anyway, I'm going to wrap up. Yeah, my final comment, of course, is it certainly would have changed the outcome, or at least impacted it, which is all that was required. A successful motion would have certainly done that. So for the reasons we stated before, we ask that this court reverse Deontay's conviction or remain in this case for a new trial or further proceedings. All right, thank you very much. The case will be taken under advisement.